I can't make this. It's hard to understand because they'll take it out on the spring coaches. Yeah, they may have furrowed it. Mr. McLaughlin, you've reserved three minutes for rebuttal. Is that correct? Correct, Your Honor. Good morning. May it please the Court, my name is Brian Tully McLaughlin. I represent SUFI Network Services. The Court of Federal Claims made two major errors in this action on remand that we ask this Court to reverse. First, with respect to overhead and profit, it violated this Court's mandate. And second, it failed to reopen the record to allow SUFI to prove its actual costs in spite of significant changes in the evidence and an intervening decision. I'm going to briefly address overhead and profit first. On overhead and profit, the Court violated the mandate because it went back and did an analysis that was already foreclosed by the law of the case. It applied a foreseeability analysis to the overhead and profit, the indirect costs for SUFI. And the problem with that is that the Court of Federal Claims in the initial proceedings had already ruled that SUFI's attorney fee claim for claim preparation fees was a direct and foreseeable consequence of the Air Force's breach. And that ruling was affirmed by this Court. And it's the type of damage, which is the claim preparation fees, that matters for foreseeability. And that's exactly what this Court ruled when it cited to Energy Northwest, in which a similar analysis that the Court of Federal Claims applied here was rejected by the Federal Circuit. Before I forget, I just had a quick question. There's been a lot of litigation here on this contract dispute. Is this the last litigation? Is this the last piece of the litigation? I'd like to say that it was. There's still more. Well, there's two principal litigations that we refer to. One we tend to refer to as Big SUFI, and that's the principal action, the original action before the board for the damages claims. That one has been on appeal twice. And so that is almost over, but for the fact that there has now been an Equal Access to Justice Act litigation fee award that the government has now appealed. So that case continues in a certain extent. And there's also a small claim before the Armed Service Board for claim preparation fees that were not covered by this case that I'm talking about. And this case we tend to refer to as Little SUFI. Okay. So this is claim preparation recovery related to the attorney's fees. That's what this case is. Correct. This case is about SUFI's claim preparation fees and only with respect to the attorney's portion of those fees. The claim preparation that was done by SUFI's direct employees as well as a non-legal consultant has already been awarded in prior proceedings before the board. And I'm going to probably come back to that when I get to the other issue about the actual cost because I think the history of the two cases is not only complex and lengthy, but it may be confusing in how the court analyzes this. So on the overhead and profit, again, this court's ruling inciting Energy Northwest had already foreclosed the foreseeability analysis that the Court of Federal Claims then applied. In Energy Northwest, there were damages flowing from a breach, and then there were indirect costs because of that. And in there, the government challenged, made similar challenges such as foreseeability, causation, et cetera, about the indirect expenses, the overhead. The Federal Circuit foreclosed that analysis and said that once the type of damage, once the original breach is shown to have caused damage, then the non-breaching party is entitled to prove its indirect costs. That's the same thing that this court ruled that the Court of Federal Claims should do on remand. And on remand for a second time, the Court of Federal Claims rejected that. I thought the Court of Federal Claims simply said we've taken into account your arguments and aren't satisfied that you met your burden of establishing why you're entitled to lost profits on the fees your attorneys collected as well as overhead on that. Yeah, well, that's the second mistake that the court made. The court, in flowing through its foreseeability analysis, it said that it didn't find that there were any indirect costs, and that is patently wrong. We presented, the court doesn't cite, but we presented, and in the original appeal, we noticed that we presented to this court as well that there was significant evidence of Sufi's indirect costs already in the record. There's time entries from the attorney fee claims showing Sufi's involvement in managing the attorneys. It almost related to the claims themselves, the big claims, as you put it, not to the attorney's fees claims, correct? I'm sorry, could you repeat that? What you're saying that the court had already made a determination as to foreseeability of indirect expenses, that was not with respect to the attorney's fees, that was all with respect to the claims that it prepared? No, not exactly. What the Court of Federal Claims ruled in the initial proceedings in this matter, which was affirmed by this court, was that the claim preparation fees done by the attorneys, by that work, was a direct and foreseeable consequence of the Air Force's breach. And so what this court ruled, citing Energy Northwest, was that once that's been decided, the indirect costs that flow from that breach, the plaintiff is entitled to prove them, and by whatever evidence is reasonably available. And that evidence, which there is evidence, and it was essentially ignored by the Court of Federal Claims. What the court said was that there was no significant value to Sue Fee's role in managing its attorneys. You said that evidence is in the record, but I guess what I'm wondering is, was it incumbent upon the judge below to go find that evidence in the record? I mean, it was up to you to pull it together and put a bow on it, right? Yes, but we didn't have that opportunity, Your Honor. The parties were going to go to remand proceedings, and we had agreed that for expediency, that we thought there might be an opportunity to resolve things simply on the papers. But we did request that for overhead in particular, that we were going to need some additional testimony to help the court, to help explain to the court the evidence regarding overhead indirect costs. That was already in the record. Supposing the remand simply said to the Court of Federal Claims, apply the common law, still exceed the scope of the mandate? Yes, it did. As I said, based on Energy Northwest, the analysis— Is there—that's all the common law there is? That's the most relevant common law, and that's, again, Energy Northwest says, you don't reconduct that analysis for the indirect costs that have flowed from the underlying type of damage, which is the claim preparation fees. So that was the problem there. Just to get back to my other point about what the evidence was and whether there were any indirect costs, is that the Court of Federal Claims there opined that SUFI didn't play any, quote, significant role in the claim preparation efforts. And that, in a sense, is the same analysis that this court overruled initially when it wrongly applied the FAR, which had an excessive pass-through charges clause, about whether the indirect—whether the management has been more than a negligible value. So there was—this court ruled there's no basis to disqualify SUFI from getting its indirect costs by opining that it wasn't significant or not. SUFI was entitled to prove what those costs were and was entitled to recover them. So for both of those bases, we are asking for a remand to reopen the record on our indirect costs, including for some additional testimony by our expert, which is what we had requested below. I'm going to move to the second issue, which is on our actual damages. Here the court denied our request to reopen the record to prove our actual damage in attorneys' fees for claim preparation work and ignored, did not even cite to, or discuss in its opinion, the two independent bases that we had provided that met the standard of reopening the record, which is that there was a significant— Are we now talking about your request to recover the contingency fee? Is that what we're talking about right now? Yes, Your Honor. Okay. And to frame that, I guess, for you is that initially the fees were awarded under a lodestar basis. So the quantum— But that was at SUFI's request, right? SUFI was urging from the beginning a lodestar methodology for calculating recovery of attorneys' fees. Is that right? That's correct. Did it ever argue in the alternative? Okay. Well, either lodestar or recover the contingency fee arrangement, depending on whichever one I end up benefiting more from. Right. We didn't in our complaint, but we did in a brief unsummary judgment in the lower proceedings, give notice to the government that if it wanted to apply the fact of the contingency arrangement to how some of the damages, particularly her interest, was measured, that we thought we should go back and calculate fees based on the actual costs, i.e., the contingency arrangement. And here I want to step back because your question goes right to one of our bases for reopening the record, which is that there was a significant change in the evidence. So when we—and here I need to again go to Big SUFI and Little SUFI. So first in Big SUFI, the main damages claims, by 2010 we had recovered about $7 million from the Armed Services Board. And so that amount effectively set by the contingency what the attorneys' fees would be that SUFI would have to pay. It was after that time, in late 2010, that in Little SUFI we filed our claim for claim preparation attorney's fees to the contracting officer and then appealed to the Court of Federal Claims. Comparing what the fees quantum would be based on a load star versus the contingency off of $7 million, those numbers roughly came out the same. And so there was no— If this arrangement all along had never been just paying the law firm based on an hourly rate, but it had always been a contingency fee arrangement, then that would be the most accurate way of recovering attorney's fees. I don't understand why didn't SUFI all along from the very beginning request recoveries for the actual fees that it was going to have to pay to its attorneys, i.e., the attorney fee contingency fee arrangement. Well, we made a judgment, but it was based, again, as I just mentioned first, on the fact that there was no real difference between what that quantum would be based on the evidence that we had. But is it fair to say the most accurate measurement of the actual attorney's fees that SUFI would have to pay would be whatever is reflected in the contingency fee arrangement? I think that's correct, but I guess that also goes into the second issue, which is that the law— it was our belief that we had no basis to calculate the fees to be awarded them under the—based on the contingency at that point. And the court, in its opinion here, noted that that was our—that was how we presented our claim, that based on the—because even though it's claim preparation, it still is attorney's fees, and it's often thought of as something special, that looking at the case law that was out there on Eagle Access to Justice Act cases, they always do it based on a load star. Even when there's a contingency agreement in place, Supreme Court fee-shifting statute cases, it's always done based on a load star. So we didn't think that we could recover quantum based on the actual contingency agreement, notwithstanding that we had one. So those were the two things that were in play, but then things changed, and that's what I wanted to get to, is that— Well, I want to get to something. Ordinarily, I wouldn't give you a second bite of the apple on a question, but I want to be clear on this. I asked you if we interpret the mandate as simply apply the common law, and your answer was simply Energy Northwest, go away. But the Court of Federal Claims says, at Headnote 2, we'll turn to the elements for establishing recovery under the common law, and then goes through a step-by-step analysis. And you're just saying, well, didn't follow Energy Northwest, so forget about it. Is that your—that's your full answer to that? That's correct, and I want to be clear that I'm talking about the overhead and profit analysis there. So if you're asking me, does that relate—I'm not clear if you're asking me if my answer relates also to the actual damage argument we have. Okay. I'm afraid to ask, but I'll ask anyway. What's the theory behind trying to collect EJIA fees on top of the attorney's fees? They're very different because the—again, here we're in claim preparation. This is non-litigation fees. No, but you were awarded attorney's fees. Yes, EJIA fees are litigation fees. So claim preparation fees were for preparing the claims that went to the contracting officer among negotiating them with the contracting officer. EJIA fees are the fees that—for prosecuting the claim. The FAR makes a distinction, even though the FAR doesn't apply here, but between non-litigation or administrative fees versus costs that are prosecution of a claim. And that's why— And the overhead and profit that you're looking for now, that's related to attorney's fees incurred in preparation of attorney's fees, a submission of attorney's fees? Correct, which this court, including Your Honor, previously directed the court to award. I'm well into my rebuttal time. Well, we told the Court of Federal Claims to apply the common law and to decide that question. Correct. I'm well into my rebuttal time, so I'll have to reserve. Okay, you're out of time, so let's move on. Good morning, Your Honors. May it please the Court. The Court of Federal Claims properly applied common law to find Sufi not entitled to overhead and profit. As the Court's already alluded to, this Court held that the common law rather than the FAR applied. The Court of Federal Claims, pursuant to this Court's mandate, identified the issue as whether Sufi should receive additional profit and overhead as a markup on the attorney's fees of its outside law firm. It then, in a very detailed manner, went through foreseeability, went through substantial causal factor, and went through reasonable certainty, and found facts for all three elements that Sufi had not met these elements, all three elements. So unless this Court's prepared to find clear error on the Court of Federal Claims' factual finding on all three elements, that should be affirmed. As Sufi has tried to do, they've sort of tried to recharacterize, because they don't want to go element by element, they try and sort of recharacterize the Court's opinion as sort of just saying that attorney's fees are special, but clearly that's not what the Court did. It laid out the elements. It went through each element. Sufi also tries to recharacterize this Court's last opinion, in this case on appeal, as holding that a party that only does negligible work must be entitled to overhead and profit. We don't think that's what this Court said at all in that part of the opinions at JA-29. The other point that counsel made with regards to we didn't have – there was a sort of presentation that we didn't have the opportunity to present sort of our evidence. That is absolutely not the case. They may have some additional evidence that they wanted to produce now. Apparently, they want to put on expert testimony with regards to supporting their overhead or profit aspect of it. But we had a trial, and at that trial they put on evidence about all the things that supposedly warranted a award of overhead and profit on these claim preparation attorney's fees. And let's be very clear. That is all that they are seeking here. This is $180,000 in overhead and profit on claim preparation attorney's fees. Well, wait a minute now. If we let them put an expert on, are they entitled to interest on the overhead on the – paying the expert? Your Honor, having dealt with Sufi a long time, I presume that that would come into play. Maybe tiny Sufi. Yes, maybe minuscule Sufi. I'm not sure, Your Honor. But – so that's my point with that though. The idea that somehow they didn't have an idea – this is going to be largely the same evidence. There may be some additional evidence with regards to the expert if the record were allowed to be reopened. But the bulk of the evidence, the trial court judge sat there in the same trial that we were at for two days and listened to the testimony of the individuals. With regards to – with that, barring any questions, I'll turn to the equitable estoppel argument. Sufi is subject to equitable estoppel because it asserted only its lodestar method before the contracting officer, before the court of federal claims in its complaint, on summary judgment, and during pretrial and at trial. Finally, before this court, Sufi raised only its lodestar award, and the court of federal claim was affirmed. We relied on all these presentations, and we would certainly be injured if Sufi were now allowed to assert variant facts. I'm just curious. How would you be injured other than having to pay – Well, the injury in many ways, Your Honor, has already occurred because what happened is that under a contingent fee, obviously we would have been arguing different numbers, and numbers that we would not have had to argue would have been the reasonableness of the hours and the reasonableness of the hourly rate. We've now put on vigorous and expensive – ultimately not prevailing, but we put on vigorous and expensive defenses on those points. And if the contingent was, in fact, what they had sought to recover the entire time, assuming it wasn't an alternative, then we wouldn't have had to do that. Have you gotten the contingency fee arrangement yet, a copy of it? No, Your Honor. And so sort of stemming off of that, I think what's very clear here is the timing. Sufi is presenting this as change in the law, change in the evidence. Let me deal with change in the law very quickly. Obviously, the judge who wrote the opinion is sitting on this panel, and I think that this panel or any panel can certainly interpret whether or not this court, in its opinion, based on sentences spanning about four pages in the opinion, one dealing with the underlying attorney's fees and one dealing with the overhead and profit, that this court, in fact, meant to effect a sea change in how attorney's fees are recovered, and that, in fact, despite all the law that Sufi cited and presented to the Court of Federal Claims, despite all that, that, in fact, this court meant to say, oh, wait a minute, actually, actual damages, contingent fee. I don't think that was this court's interpretation at all, and I don't think any panel of this court would interpret the opinion that way. But the other point that I would like to make is with regards to timing. The idea, you know, Sufi is shrouding this sort of in the idea that, well, there was a change in the law. I've already talked about that. There was a change in the facts. And on the issue of whether or not there was a change in the facts, we don't see the change in the quantum of the award to be a change in the facts. As some questions have already indicated, they could have made this argument at any step along the way. We didn't need a number tied to it in order for them to assert the argument that, hey, we want this or this. The timing is quite clear. Before, the lodestar method was more. Now, the lodestar method is less. And that's essentially all the court needs to know with regards to timing. I guess the last point I'll touch on with regards to equitable estoppel is that the Court of Federal Claims' finding could be alternatively upheld based upon waiver, an argument we raised below. Sufi waived its contingent fee damages theory at trial, and such waiver places Sufi's lodestar award within the scope of the Court of Federal Claims' initial judgment and not subject to revision under the mandate rule. Sufi's argument that footnote 21, the argument counsel made was that their brief referenced this. Oh, it very much was a reference. It was in a footnote. It was not a developed argument. It is absolutely not a preserved argument that they sort of proffered this contingency. And that's in plaintiff's brief 14, note 6. It's unavailing because clearly that footnote did not raise, let alone develop, its contingent fee damages theory. And even if not waived before the Court of Federal Claims, such argument was certainly waived before this court as it was not raised in Sufi's opening appellate brief. Sufi hasn't twice intentionally relinquished or abandoned a known right. Therefore, barring any questions from the court, for all the reasons presented today and in our response brief, we respectfully request that the Court of Federal Claims dismiss it. What's your view just generally on the issue that's presented to us of profit and overhead related to attorney's fees incurred by an outside law firm? I mean, as a former partner and managing director of a law firm, I never had a client look at us as a profit center. You know, as they pay us fees and therefore they tie some sort of profit into that. How do you make the profit argument that's being put out by Sufi here? Well, Your Honor, and while I think that is a part of the basis of the opinion below, I don't think that's all of it. I mean, I think your gut instinct is correct. Typically, outside counsel is not sort of a profit center. And I think that the Court of Federal Claims was well-grounded in its foreseeability analysis. No, they're not. They're a cost center. Exactly, Your Honor. But Sufi's view is that they're a cost just like any other cost. But sort of what that view hinges upon is an apparent what they think is an inability by the fact defender to really look at the actual cost and differentiate between them. There's a big difference between a Sufi employee who's working on a claim and that Sufi has direct billed and that Sufi sought overhead and profit on and was not allowed to get overhead because they didn't prove it up before the board. This court affirmed that. They were given profit. There's a big difference between that $40 an hour Sufi employee and an attorney that's billing $500 an hour. And there's just not an expectation of the amount of oversight. Now, Sufi wants to sort of whitewash all of that and say that, no, this is a cost and this is a cost and we get overhead and profit on all our costs. And here this case doesn't even involve the two scenarios you point out. It seems to me this case involves you have a $400 an hour lawyer or an associate of a law firm that expends time putting together their billing records and everything to claim attorney's fees and then Sufi claiming those costs as lost profit and overhead, claiming that. Yes, Your Honor. Let's be clear, though. What Sufi was compiling was their claim. And that's why this is limited to strictly claim preparation attorney's fees. And we don't dispute that their attorneys spent time preparing their claim. Obviously, at this point, we're down to a very narrow part of that. We're down to the overhead and profit aspect of that. And sort of the gut reaction that you're having that this is not something that would normally be overhead and profit, I think that's correct. Now, is there a case out there saying that it cannot be? I don't think that's the case. I think you have to go through the analysis. And I think that the court went through the analysis in this case. And when the court went through the analysis, it was able to see a difference in all of the elements under the common law recovery on these types of charges versus as opposed to a regular Sufi employee who's getting sort of documents together out of the file, a Sufi employee. And the reason I draw that distinction is because Sufi's recovered those amounts. Sufi's recovered – in its 30 claims, it had amounts in each claim for the Sufi employee that worked on that. But it also recovered the fees of the outside counsel spent on working those claims. Yes, Your Honor. Right? Yes, Your Honor. On those 28 different breach contract claims. Yes, Your Honor. So what is it that's left here in terms of attorney's fees? Well, there's nothing – The fees that they've incurred in compiling together their hourly records and things of that nature to come up with attorney's fees. Well, that may be left, Your Honor, and that case may be coming, but that's not what's at issue here. That's not what's at issue here, Your Honor. So just so I understand, I think I share the room's gut instinct about getting lost profits or a lost profit kicker on the attorney's fees. But what about the overhead in terms of the labor that a Sufi employee undertook to assist the lawyer in order to prepare the claim? Are you saying that that was already recovered in the – or attempted to be recovered in a different Sufi litigation, maybe a big Sufi named Little Sufi? The answer to your question is yes, Your Honor, but I want to be perfectly clear. Those were different fees. I'm not trying to say that Sufi's seeking a double recovery. I'm not saying that. All I'm saying is that they are now seeking overhead on their attorneys, and I think that to the extent that they could satisfy all the elements and prove that up, then it could be awarded. They're seeking overhead on their outside counsel. Yes, Your Honor. Not their attorneys. Not their in-house counsel. Right. There is no in-house counsel, Your Honor, so I'm sorry I'm using those phrases interchangeably. One would expect that that's built into the fees. Yes, Your Honor. So I guess I'll leave it at that. Okay, thank you. You have three minutes, Mr. McLaughlin. Thank you, Your Honor. First, quickly, on overhead and profit, I want to make clear that here, again, this is not a fee-shifting statute about attorney's fees here. We're under the common law, and when it's a non-litigation purpose, the fact that an attorney does it versus an employee or a consultant makes no difference under the law. You're entitled to the actual cost, and so the fee that is charged to the client, to the plaintiff, is their cost. And the law says that you're entitled— What's your theory on lost profits? Because I just pretend for a moment that I don't get it. So can you explain to me how you are entitled to some kind of lost profits kicker based on the fees that were collected by the law firm? That's what the federal circuit says under energy and other case law that a party is enabled to recover when they have a breach. They're entitled to recover their indirect cost, which includes a profit. Even the FAR clauses envision that a profit would be added. It's the labor of someone that's completely outside of the company. It's the labor of attorneys that are in an outside law firm that SUFI wants to say it wants to collect profits on. That's what I don't understand. Maybe I'm not making— I understand that, but I think we've cited a few cases like Allied Materials in our briefs in which that award was exactly made. A legal fee for outside counsel was—those fees were recovered because they were non-litigation fees, and they were burdened with overhead and profit in that case. So we have support for that. I don't think it matters that it's an outside counsel. I also just wanted to say that we're not saying that the common law doesn't have a foreseeability analysis, but the court already made that analysis when it—regarding the claim operation fees. I wanted to take, if Your Honor might permit me, just two extra minutes on the actual cost issue. I'll give you an extra minute so you can wind up. Okay. The issue on whether there's an injury or not to the government is the equitable estoppel analysis is overcome by the fact that we're seeking an exception to the mandate, and we think we've provided that given the significant change in the evidence, namely what SUFI has to pay in its contingency arrangement of what its actual costs are and the intervening decision, which is this case. And I wanted to note there that we did proceed originally under the Lodestar, however—and the government accepted that, but it was then the government that changed the game. The government is the one who made the first appeal. We didn't appeal. They did. And in their appeal, they challenged the Lodestar application to the calculation of interest. They said, no, you shouldn't calculate it based on the Lodestar because SUFI has a contingency agreement. And we had noted then before the trial court that if the government wants to calculate it that way, well, then they can't have their cake and eat it too. They can't have it both ways. Well, then we should do the actual fees based on our contingency as well. And when this court agreed with the government on interest, it changed the law. Thank you. All right. Thank you very much. Court stands in recess. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.